UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALVIN D. FRAZIER,

        Plaintiff,

v.

JEFFREY WOODS et al.,

        Defendants.
_____/

Case No. 2:17-cv-00089

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods, Unknown Party #1, Unknown Party #2, Derusha, Caraccio, Huss, Yunker, and Tallic. The Court will serve the complaint against Defendants Butler, Isard, MacArthur, Russo, McGeshik, Herbert, Dunton, Line, Grove, Gallagher, McLeod, Olson, Marlette, and Pokley.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) and the Kinross Correctional Facility (KCF), which are both in Kincheloe, Chippewa County, Michigan. Plaintiff's allegations also concern events at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues URF employees Warden Jeffrey Woods, Assistant Resident Unit Supervisor Unknown Butler, Deputy Warden David Isard, Corrections Officer Unknown MacArthur, Corrections Officer Unknown Russo, Mental Health Service Worker Unknown McGeshik, Social Worker Mark Herbert, Assistant Resident Unit Supervisor K. Dunton, Unknown Party #1 Hearing Investigator John Doe, Unknown Party #2 Assistant Resident Unit Supervisor John Doe, Assistant Resident Unit Supervisor Unknown Line[1], Corrections Officer Unknown Derusha, Corrections Officer J. Grove, Sergeant D. Gallagher, Corrections Officer Unknown Caraccio, and Resident Unit Manager G. McLeod. Plaintiff also sues KCF employees Deputy Warden Kathy Olson and Resident Unit Manager M. Marlette, as well as MBP employees Warden Erica Huss, Librarian A. Yunker, Screener C. Tallic, and Assistant Resident Unit Supervisor/Screener Mark W. Pokley. Finally, Plaintiff sues Hearing Officer Unknown O'Brien and Hearings Administrator Richard D. Russell.

---

[1] Although Plaintiff did not list Unknown Line as a defendant in his amended complaint, he did list him in his original complaint and continues to make allegations against him in the body of his complaint. Therefore, the Court will assume that Plaintiff intends to include Unknown Line as a defendant and that the failure to list him as one in his amended complaint was a mere oversight.

In Plaintiff's amended complaint (ECF No. 7), he alleges that he was transferred to URF on June 27, 2013. On October 1, 2013, Plaintiff notified Defendant Butler that he needed protection from family and friends of his victim, who were housed at the same facility. Plaintiff identified relatives of his victim named "Bobby Unknown (AKA Black)" and Dontee Laury. Defendant Butler merely advised Plaintiff to stay away from those individuals. In mid-January of 2014, Defendant Butler asked Plaintiff to move to the West Side of URF, where Dontee Laury was housed. Plaintiff asked for protection and begged not to be moved near Laury. Defendant Butler ignored Plaintiff's pleas and had a female staff member threaten Plaintiff with false misconduct tickets and segregation. Plaintiff notes that the order to move him was made when Defendant Butler was out of the office and could not be confronted by Plaintiff.

After he was moved to the West Side, Plaintiff informed Defendants Gallagher and Line that Dontee Laury, who was the cousin of Plaintiff's victim Kizzy Laury, was conspiring with other prisoners to have Plaintiff killed. On September 30, 2014, Plaintiff was transferred to KCF, which was across the street from URF. Plaintiff states that KCF and URF frequently exchanged prisoners. Plaintiff kited his mental health case manager, asserting that he was still in danger, and he was placed in segregation for his protection. Plaintiff told Defendant Olson and other Security Classification Committee (SCC) members that he had been shown a knife while on the yard, and had been told that he was going to be stabbed. Defendant Olson told Plaintiff to "take a stand" because the prison would be closing soon.

A few days later, Defendants Olson and Marlette met with Plaintiff and again told Plaintiff to "take a stand." Plaintiff was moved to the general population in spite of his requests for protection. A few days later, Plaintiff was assaulted by the same prisoners who had threatened

3

him in the yard. Plaintiff was taken to health care by a yard officer. Plaintiff asked the officer to ensure that his property was secured, but the officer failed to comply and Plaintiff's hobby-craft items, television, picture frames, and ear buds were stolen or lost. Health care staff placed Plaintiff in segregation. Plaintiff refused to return to general population and was placed on suicide watch.

On December 3, 2014, Defendants Olson and Marlette told Plaintiff that he was being transferred back to URF. Plaintiff was transferred on December 8, 2014, and refused to go to general population. Plaintiff received a misconduct for disobeying a direct order and was placed in segregation. Plaintiff states that he continued to receive tickets for refusing to go to the general population, but that he insisted on protection from his victim's family members. On December 21, 2014, Defendant Caraccio retaliated against Plaintiff for refusing to go to the general population by writing a threatening behavior ticket, which claimed that Plaintiff had yelled at him from behind a closed door during rounds. After Plaintiff found out about the ticket, he approached Defendant Caraccio and explained that he had been in bed sleeping at the time of the ticket. Defendant Caraccio apologized, but stated that he could not rescind the ticket once it had been written. Defendant O'Brien found Plaintiff guilty without the benefit of witness statements, asserting that Plaintiff had not asked for witness statements. Plaintiff received 10 days in detention. Plaintiff requested a rehearing, stating that a request for witnesses was clearly marked on the investigation report. Plaintiff's rehearing request was denied by Defendant Russell.

While Plaintiff was still in detention, he was taken before Defendants Isard, Dunton, and McLeod, who asked Plaintiff to return to general population. Plaintiff was afraid of being assaulted and refused. Defendants Isard, Dunton, and McLeod were angry and told Plaintiff that if he did not comply, they would send him to a level five facility, which was an increase of

three levels. On April 29, 2015, Plaintiff was transferred to MBP, where Defendant Pokley told him that he had heard that Plaintiff was a "problem child" who needed to be "dealt with locally." Plaintiff told Defendant Pokley of his prior requests for protection because he feared being sent back to URF or KCF.

Plaintiff alleges that Defendant Yunker removed him from the legal writer program in retaliation for requesting assistance with judicial review requests on class I misconduct tickets. Plaintiff states that while at MBP, Eric Mattson from the Office of Legislative Corrections Ombudsman interviewed him regarding his complaints of lost property and the denial of legal writer services. Mr. Mattson concluded that Plaintiff's claims that he was not provided with protection were moot because he was no longer housed at URF or KCF, but stated that he would continue to investigate Plaintiff's stolen property claims. Mr. Mattson also told Plaintiff that copies of his grievances were on file with his office and available to Plaintiff if he needed access to them.

On September 24, 2015, Defendant Pokley came to Plaintiff's cell and confiscated his "Observation Aide" study guides. Defendant Pokley told Plaintiff that he would like where he was going and that he was being transferred back to URF. Upon Plaintiff's arrival at URF, Plaintiff requested protection. Defendants Isard, Dunton, and McLeod told Plaintiff that he would miss his first outdate if he did not go to general population, so Plaintiff complied.

Plaintiff was placed in level four housing amongst Security Threat Group Members. When Plaintiff had a problem with his cellmate, he attempted to get a new room assignment. Plaintiff states that despite the fact that all involved parties had signed consent forms, he was not

5

moved, but that white prisoners were moved upon request. Plaintiff refused to room with "gang bangers," and was forced to serve 10 days in detention.

On January 23, 2016, Plaintiff was moved to level two housing on the same floor as Dontee Laury. As soon as Plaintiff saw Dontee Laury, he told Defendant Russo that he was in danger. Defendant Russo told Plaintiff that he would be "all right," and that he should roll up his shirt sleeves because any moves had to be made by SCC members. Defendant Russo told Plaintiff that they had just installed new cameras and could see "through the eye of a needle." Plaintiff went to the yard and was stabbed several times in the back, neck, and shoulders. Following the stabbing, Plaintiff sought the assistance of Defendant Grove, who was standing a few feet away during the attack. Defendant Grove took Plaintiff to health care. The yard was locked down, but staff claimed that the incident was not caught on camera and that they did not know who had stabbed Plaintiff.

Plaintiff was taken to the hospital by Defendants Grove and Derusha, where he was treated for multiple stab wounds to his right shoulder, arm, and back in the area of his lungs. Plaintiff claims that Defendants Derusha and Grove taunted him during transport, calling his wounds "ant bites." After treatment, Plaintiff was returned to URF and placed in protection. Defendant Gallagher showed Plaintiff pictures of inmate "Bobby Unknown" and asked if he had done the stabbing. Defendant Gallagher stated that the administration had received several kites prior to the attack, stating that the attack was going to happen.

Plaintiff told Defendants Herbert and McGeshick about his fear of being assaulted, but they failed to prevent Plaintiff from being placed on the yard with family members of Plaintiff's

victim. Plaintiff states that Defendant Dunton stuck his fingers in the wound on Plaintiff's neck and stated, "Oh, it's not that bad."

Plaintiff asserts that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant Caraccio retaliated against him for refusing to go to general population on December 21, 2014, by writing a threatening behavior misconduct on him. Threatening behavior is a class I violation. *See* MDOC Policy Directive 03.03.105A, ¶ 012. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff fails to allege facts showing that Defendant Caraccio was motivated by a desire to retaliate against him when he wrote the ticket. Plaintiff alleges that when he explained to Defendant Caraccio that he had been sleeping during the alleged misconduct, Defendant Caraccio apologized to Plaintiff, but explained that he could not rescind the ticket after it was issued. Plaintiff does not allege any facts showing that Defendant Caraccio was aware of Plaintiff's refusal to go to general population, or was affected by this refusal in any way. Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). Therefore, Plaintiff's retaliation claim against Defendant Caraccio is properly dismissed.

Plaintiff also claims that Defendant Yunker retaliated against him by removing him from the legal writer program after he requested assistance with judicial review requests on class

9

I misconduct tickets. However, as with Defendant Caraccio, Plaintiff fails to allege any facts showing that Defendant Yunker was motivated by a desire to retaliate against him when he removed Plaintiff from the legal writer program. Therefore, Defendant Yunker is properly dismissed from this action.

Plaintiff claims that Defendants Caraccio, O'Brien, Russell, and Unknown Party Hearing Investigator John Doe violated his due process rights in relation to the threatening behavior misconduct written by Defendant Caraccio. Plaintiff claims that the major misconduct charges against him were "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). In this case, Plaintiff received 10 days in detention. Plaintiff has not identified any significant deprivation arising from

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due process claims against Defendants Caraccio, O'Brien, Russell, and Unknown Party Hearing Investigator John Doe are properly dismissed.

In addition, the Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's claim against Defendant O'Brien fails because he is absolutely immune from suit for damages under the circumstances of this case.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Plaintiff claims that Defendants Grove and Derusha violated his Eighth Amendment rights when they taunted him during his transport to the hospital by belittling his injuries. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Derusha and Grove arising from their alleged verbal abuse. Because that is the only claim that Plaintiff has asserted against Defendant Derusha, he is properly dismissed from this complaint.[3]

---

[3] Plaintiff alleges that Defendant Grove was standing a few feet away from him during the attack in the yard in January of 2016.

The Court notes that Plaintiff fails to make specific factual allegations against Defendants Woods, Huss, Unknown Party #2, and Tallic, other than his claim that they failed to conduct an investigation in response to his grievances. In fact, Plaintiff fails to even mention Defendants Tallic or Unknown Party #2 in the body of his complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Woods, Huss, Unknown Party #2, and Tallic engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Finally, the Court notes that Plaintiff's Eighth Amendment failure to protect claims against Defendants Butler, Isard, MacArthur, Russo, McGeshik, Herbert, Dunton, Line, Grove, Gallagher, McLeod, Olson, Marlette, and Pokley are not frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, Unknown Party #1, Unknown Party #2, Derusha, Caraccio, Huss, Yunker, and Tallic will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Butler, Isard, MacArthur, Russo, McGeshik, Herbert, Dunton, Line, Grove, Gallagher, McLeod, Olson, Marlette, and Pokley.

An Order consistent with this Opinion will be entered.

Dated: November 17, 2017  /s/ Janet T. Neff
Janet T. Neff
United States District Judge