UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALVIN D. FRAZIER #379628,

        Plaintiff,        Case No. 2:17-cv-00089

v.        HON. JANET T. NEFF

JEFFREY WOODS, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Alvin D. Frazier pursuant to 42 U.S.C. § 1983. The opinion issued on November 17, 2017, determined that Plaintiff stated an Eighth Amendment failure to protect claim against Defendants Butler, Isard, MacArthur, Russo, McGeshik, Herbert, Dunton, Line, J. Grove, D. Gallagher, G. McLeod, Kathy Olsen, M. Marlette[1], and Mark W. Pokley. Defendants filed a motion for summary judgment (ECF No. 46) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 56).

Plaintiff alleges that he was transferred to Chippewa Correctional Facility (URF) on June 27, 2013. On October 1, 2013, Plaintiff notified Defendant Butler that he needed protection from family and friends of his victim, who were housed at the same facility. Plaintiff identified relatives of his victim named "Bobby Unknown (AKA Black)" and Dontee Laury. Defendant Butler merely advised Plaintiff to stay away from those individuals. In mid-January of 2014,

---

[1] Plaintiff refers to Defendant Marlette as "Mallette."

Defendant Butler asked Plaintiff to move to the West Side of URF, where Laury was housed. Plaintiff asked for protection and begged not to be moved near Laury. Defendant Butler ignored Plaintiff's pleas and had a female staff member threaten Plaintiff with false misconduct tickets and segregation.

After he was moved to the West Side, Plaintiff informed Defendants Gallagher and Line that Dontee Laury, the cousin of Plaintiff's victim Kizzy Laury, was conspiring with other prisoners to have Plaintiff killed. On September 30, 2014, Plaintiff was transferred across the street to Kinross Correctional Facility (KCF). Plaintiff states that KCF and URF frequently exchanged prisoners. Plaintiff kited his mental health case manager, asserting that he was still in danger, and he was placed in segregation for his protection. Plaintiff told Defendant Olson and other Security Classification Committee (SCC) members that he had been shown a knife while on the yard and had been told that he was going to be stabbed. Defendant Olson told Plaintiff to "take a stand" because the prison would be closing soon.

A few days later, Defendants Olson and Marlette met with Plaintiff and again told Plaintiff to "take a stand." Plaintiff was moved to the general population where he was assaulted by the same prisoners who had threatened him in the yard. Plaintiff was taken to health care by a yard officer. Plaintiff asked the officer to ensure that his property was secured, but the officer failed to comply and Plaintiff's hobby-craft items, television, picture frames, and ear buds were stolen or lost. Health care staff placed Plaintiff in segregation. Plaintiff refused to return to general population and was placed on suicide watch.

On December 3, 2014, Defendants Olson and Marlette told Plaintiff that he was being transferred back to URF. Plaintiff was transferred on December 8, 2014, and refused to go to general population. Plaintiff received a misconduct for disobeying a direct order and was placed

in segregation. Plaintiff states that he continued to receive tickets for refusing to go to the general population, but that he insisted on protection from his victim's family members.

While Plaintiff was still in detention, he was taken before Defendants Isard, Dunton, and McLeod, who asked Plaintiff to return to general population. Plaintiff was afraid of being assaulted and refused. Defendants Isard, Dunton, and McLeod were angry and told Plaintiff that if he did not comply, they would send him to a level five facility, which was an increase of three levels. On April 29, 2015, Plaintiff was transferred to Marquette Branch Prison (MBP), where Defendant Pokley told him that he had heard that Plaintiff was a "problem child" who needed to be "dealt with locally." Plaintiff told Defendant Pokley of his prior requests for protection because he feared being sent back to URF or KCF.

On September 24, 2015, Defendant Pokley came to Plaintiff's cell and confiscated his "Observation Aide" study guides. Defendant Pokley told Plaintiff that he would like where he was going and that he was being transferred back to URF. Upon Plaintiff's arrival at URF, Plaintiff requested protection. Defendants Isard, Dunton, and McLeod told Plaintiff that he would miss his first outdate if he did not go to general population, so Plaintiff complied.

On January 23, 2016, Plaintiff was moved to level two housing on the same floor as Dontee Laury. As soon as Plaintiff saw Dontee Laury, he told Defendant Russo that he was in danger. Defendant Russo told Plaintiff that he would be "all right," and that he should roll up his shirt sleeves because any moves had to be made by SCC members. Defendant Russo told Plaintiff that they had just installed new cameras and could see "through the eye of a needle." Plaintiff went to the yard and was stabbed several times in the back, neck, and shoulders. Following the stabbing, Plaintiff sought the assistance of Defendant Grove, who was standing a few feet away during the

3

attack. Defendant Grove took Plaintiff to health care. The yard was locked down, but staff claimed that the incident was not caught on camera and that they did not know who had stabbed Plaintiff.

Plaintiff told Defendants Herbert and McGeshick about his fear of being assaulted, but they failed to prevent Plaintiff from being placed on the yard with family members of Plaintiff's victim. Plaintiff states that Defendant Dunton stuck his fingers in the wound on Plaintiff's neck and stated, "Oh, it's not that bad."

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir.

2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the

5

administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent

federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[2]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same

---

[2] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants state that that Plaintiff properly exhausted grievance URF 1501-01-12-03B against Defendants Isard, K. Dunton, and McLeod for failure to protect arising out of a December 2014 SCC meeting. Defendants have attached the Step I grievance to their motion. (ECF No. 47-3, PageID.287). In his Step I grievance Plaintiff named the SCC at URF for failing to protect him. Defendants Isard, K. Dunton, and McLeod concede that they were members of the SCC during this time period.

Defendants argue that Plaintiff failed to exhaust his remaining claims. Plaintiff asserts that he did exhaust his failure to protect claims against each Defendant. Plaintiff argues that grievance URF 1504-0876-17a exhausted claims against SCC members which includes Defendant Dunton. Defendants have failed to attach the Step I, II, and III grievances to their motion. Defendants have attached only the Step III grievance response (PageID.280) which fails to disclose the claims grieved by Plaintiff or the individuals grieved. The MDOC Prisoner Step III Grievance Report indicates that the Step I was received on April 3, 2015 and the Step III response was mailed on May 29, 2015. (PageID.271).

Plaintiff argues that in grievance URF 1503-0599-22B he exhausted his claim against the SCC members for telling him to go into level 4 general population with his enemies despite already being assaulted. Defendants have attached Plaintiff's Step I grievance and response. (PageID.282). Defendants concede that this grievance was exhausted. Similarly, Plaintiff argues that grievance URF 1501-0222-12B was exhausted against Defendant McGeshick and SCC members for ignoring his request to transfer from KCF due to a threat to his safety or due to self-harm if he is forced to go to general population. Defendants attached Plaintiff's Step I grievance and the Step I response. (PageID.283-284). Defendants concede that this grievance was exhausted. Defendants argue that this grievance has nothing to do with an alleged failure to protect Plaintiff from harm by another inmate. In the opinion of the undersigned, this grievance is sufficient to exhaust a claim that Defendant McGeshick ignored Plaintiff's request for protection.

At Step I Plaintiff wrote grievance KCF 14-11-01257-12c on staff at KCF, "Malette," and the SCC. Plaintiff asserted that he was not allowed to speak with mental health services and that a female member of the SCC told him "to make a stand" regarding the threats to his life and the danger that he was in at the prison. (PageID.286). At Step III, Plaintiff's grievance

9

was rejected as untimely because the appeal was received on March 3, 2015, when it was due on February 23, 2015.  (PageID.285).  Plaintiff states that he was not given an appropriate time to mail his Step III appeal after he received the Step II response.  Plaintiff asserts that, in violation of policy, he was given only five days to send the response and that he has no control over the timeliness of institutional mail.  Plaintiff argues that this demonstrates that the grievance process was unavailable due to Defendants' manipulation.  Plaintiff has alleged that this grievance was rejected improperly based upon the timing between when he actually received the Step II response and when he mailed out his Step III appeal.  Arguably, Plaintiff has demonstrated that this grievance would have been properly exhausted but for a mistake by prison officials or the mishandling of his mail.  In the opinion of the undersigned, Defendants have failed in their burden of establishing that Plaintiff did not exhaust this grievance.  Nevertheless, whether Plaintiff actually exhausted this grievance is not dispositive because Plaintiff has exhausted grievances against these Defendants.

Plaintiff alleges that in grievance URF 14-12-3955-27A he grieved that staff ordered him to go to general population without the benefit of the SCC report and, when he refused, he was given a misconduct ticket.  It does not appear that the Step I or Step II grievances are part of the record.  Defendant has attached the Step III grievance rejection letter finding that Plaintiff's grievance presented an issue that may not be grieved because it was part of the misconduct hearing process.  (PageID.288).

Plaintiff asserts that in URF 1405-1497-03B he grieved Defendant ARUS Butler and officer R. Shaw's failure to acknowledge that he had a notification in his file providing that he should not be housed with his victim's family member on the West Side of the prison.  (PageID.290).  Plaintiff asserts that he was given an order by R. Shaw to move to the West Side

in direct disregard to his safety.  Plaintiff asserts that he exhausted this issue against Defendant Butler.

Plaintiff specifically named Defendants Butler, Isard, McGeshik, Dunton, G. McLeod, M. Marlette, and SCC members in his grievances.  Plaintiff's complaint identifies Defendants "Mallette," Isard, Dunton, and McLeod as SCC members.  In looking at the evidence in the light most favorable to Plaintiff, it is the opinion of the undersigned that Plaintiff did not properly exhaust his claims against Defendants MacArther, Russo, Herbert, Line, J. Grove, D. Gallagher, Kathy Olsen, and Mark W. Pokley.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 46) be granted in part dismissing Defendants MacArther, Russo, Herbert, Line, J. Grove, D. Gallagher, Kathy Olsen, and Mark W. Pokley without prejudice due to Plaintiff's failure to exhaust administrative grievance remedies.  If the Court accepts this recommendation, Plaintiff's Eighth Amendment failure to protect claims will continue against Defendants Butler, Isard, McGeshik, Dunton, G. McLeod, and M. Marlette.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   November 5, 2018

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).