UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALVIN D. FRAZIER #379628,

    Plaintiff,

v.

UNKNOWN BUTLER, et al.,

    Defendants.
_____/

Case No. 2:17-cv-00089

Hon.  Janet T. Neff
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

State prisoner Alvin D. Frazier filed this civil rights action pursuant to 42 U.S.C. § 1983.  Frazier alleges that the remaining Defendants – ARUS Barry Butler, Deputy Warden David Isard, Mental Health Professional Cory McGeshick, ARUS Kenneth Dunton, Prison Counselor Gary McLeod, and SCC member Marquita Marlette – failed to protect him from an inmate assault in violation of his Eighth Amendment rights.

Frazier says that he made numerous requests for protection from family members of the victim of his crime beginning in 2013.  Frazier was housed during the relevant time period at the Chippewa Correctional Facility (URF), the Kinross Correctional Facility (KCF), and the Marquette Branch Prison (MBP).  Frazier states that Defendants denied his requests and ordered him out of protective custody to the general population.  When he refused orders, he was given misconduct tickets

for disobeying direct orders (DDO tickets). Frazier says that he was threatened and assaulted by unidentified prisoners, but was repeatedly denied protection. In January of 2016, Frazier was stabbed in the yard. Following this attack, Frazier was transferred to a different facility.

Defendants filed a motion for summary judgment. (ECF No. 78.) Their primary arguments are that Frazier has not shown (i) that each Defendant was aware of a threat of harm, (ii) that they were deliberately indifferent to a threat of harm, and (iii) that the Security Classification Committee (SCC) members who considered Frazier's claims were deliberately indifferent based upon their conclusion that Frazier failed to substantiate his need for protection. Frazier responds that each of the Defendants knew about the threats to him and wrongfully denied his requests for protection. (ECF No. 86.)

The undersigned has reviewed the materials filed by the parties. It is clear from the record that Frazier believed that he had been threatened. The Court is not unsympathetic to his concerns. But it is also clear from the record that prison officials conducted multiple investigations of Frazier's claims and concluded that his credibility was at issue because his reports were unnecessarily delayed and he had failed to provide any identifying information to assist officials in determining that a real threat existed. The evidence before the Court shows that Frazier has not presented evidence creating a genuine issue of fact regarding this conclusion. Accordingly, I respectfully recommend that the Court grant the motion and dismiss this case.

## II. Procedural History

Frazier's original complaint is dated May 11, 2017. (ECF No. 1.) Frazier filed an amended complaint on November 12, 2017. (ECF No. 12.) Frazier originally named 25 Defendants. On November 17, 2017, this Court issued an opinion dismissing all claims and parties except for Frazier's Eighth Amendment claims against Defendants Butler, Isard, MacArthur, Russo, McGeshik, Herbert, Dunton, Line, Grove, Gallagher, McLeod, Olson, Marlette, and Pokley. (ECF Nos. 13 and 14.)

On May 4, 2018, Frazier filed a Second Amended Complaint. (ECF No. 52.) On November 30, 2018, this Court granted summary judgment due to Frazier's failure to exhaust administrative remedies as to Defendants Herbert, Line, MacArther, Olson, Pokley, Russo, Gallagher, and Grove. (ECF No. 64.) Six Defendants remain in the case.

## III. Factual Allegations

Frazier was transferred to URF on June 27, 2013. (ECF No. 52, PageID.313.) Frazier says that on October 1, 2013, he notified Defendant Butler of his need for protection from family and friends of his victim who were housed at the same facility. (*Id.*) Frazier says that he identified two prisoners – "Bobby Unknown (AKA Black)" and Dontee Laury – as family members of the victim of a crime he previously committed,[1] and says that these prisoners had a "vendetta" against him. (*Id.*)

---

[1] MDOC's Offender Tracking Information System (OTIS) indicates that Frazier

Frazier alleges that Defendant Butler merely advised him to stay away from those individuals. (*Id.*)

Frazier states that in mid-January of 2014, Defendant Butler asked him to move to the West Side of URF, where Laury was housed. (*Id.*, PageID.313-314.) Frazier says that Defendant Butler disregarded his request for protection and had a female staff member threaten him with a misconduct ticket for refusing to move. (*Id.*, PageID.314.)

On September 30, 2014, Frazier was transferred across the street to KCF. (*Id.*) Frazier alleges that he kited his mental health case manager, asserting that he was still in danger, and was placed in segregation for his protection. (*Id.*) The Security Classification Committee (SCC) then held a meeting with Frazier to discuss his request for protection. (*Id.*) Frazier says that he explained to the SCC members that he had been shown a knife while on the yard and had been told that he was going to be stabbed. (*Id.*) Frazier says that he was told to "take a stand" because the prison was closing soon. (*Id.*) The Request for Protection/Investigation Report states in part:

---

was convicted of second degree murder in Saginaw County, Michigan, with an offense date of June 10, 2006. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=379628 (last visited Feb. 18, 2020).

| REASON PROTECTION IS BEING REQUESTED | | |
|---|---|---|
| (Include who made the request and the circumstances or claims relating to the request; attach extra pages if necessary.) | | |
| Prisoner Frazier # 379628 stated to me that he was threatened while on the yard several times. Frazier stated that he was in fear for his life. I have placed Frazier in temporary segregation pending SCC review for his protetion. | | |
| Reporting Staff Name & Title: Sgt. K. Esslin CSS11 | Signature: | Date: 11/12/14 |

| INVESTIGATION INFORMATION | | |
|---|---|---|
| Prior protection requests and placements, including in protective segregation: | | |
| Additional Information: | | |
| Investigation Narrative: (Attach extra pages if necessary.) | | |
| Frazier # 379628 feels that the threat has came with him from URF. Frazier was placed in temporary segregation pending SCC review. | | |
| Investigator Name & Title: Sgt. K. Esslin CSS11 | Signature: | Date: 11/12/14 |
| Note: Forward to Deputy Warden for SCC review when above is completed. | | |

| SCC REVIEW AND DECISION |
|---|
| (Include rationale for decision. If transfer to general population at another facility is recommended, include why it is believed protection needs cannot be met at current facility.) |
| Prisoner states that he was threatened by some prisoners that may have come from URF. They may be GDs. No names, numbers or witnesses. Release to gp. |

(ECF No. 79-4, PageID.469.)

Frazier says a few days later he was again interviewed by the SCC, which included Defendant Marlette, and told to "take a stand." (ECF No. 52, PageID.314-315.) The Request for Protection/Investigation Report states in part:

- 5 -

| REASON PROTECTION IS BEING REQUESTED | | |
|---|---|---|
| (Include who made the request and the circumstances or claims relating to the request; attach extra pages if necessary.) | | |
| Prisoner Frazier 379628 G-1-57 claims he was assaulted in front of the kitchen at approximately 0545 hours. Frazier states he was also assaulted last evening but did not report the incident to the unit officer. Frazier states he is being targeted but he does not know why. Farzier was seen by Nurse DeFreitas and treated. See Frazier's attached written statement. | | |
| Reporting Staff Name & Title: Michele Price ASgt | Signature: [signed] | Date: 11/16/14 |

| INVESTIGATION INFORMATION | | |
|---|---|---|
| Prior protection requests and placements, including in protective segregation: Protection requested 11/14/14 and denied, KCF; Frazier returned to general population. | | |
| Additional Information: | | |
| Investigation Narrative: (Attach extra pages if necessary.) | | |
| Prisoner Frazier believes the assault this morning is related to the claimed assault he sustained last evening in G Unit. Frazier did sustain wounds to the back of his neck and the right side of his cheek. Frazier placed in temporary segregation pending review of his protection needs. | | |
| Investigator Name & Title: Michele Price, ASgt | Signature: [signed] | Date: 11/16/14 |

**Note:** Forward to Deputy Warden for SCC review when above is completed.

| SCC REVIEW AND DECISION | | |
|---|---|---|
| (Include rationale for decision. If transfer to general population at another facility is recommended, include why it is believed protection needs cannot be met at current facility.) | | |
| Prisoner's protection was denied on 11-14 and he went back to gp. On 11-16 he states he was assaulted in front of the chow hall. He also states he was assaulted in G unit on 11-15 but never reported it. His credibility is an issue. | | |
| SCC Staff Name & Title: K. Olson, DW | Signature: K. Olson | Date: 11/21/14 |
| SCC Staff Name & Title: M. Leith, RUM | Signature: Ron Leith | Date: 11-21-14 |

(ECF No. 79-4, PageID.471.) Frazier was moved to the general population where he alleges that he was assaulted by the same prisoners who had threatened him in the yard. (ECF No. 52, PageID.314-315.)

Frazier was transferred back to URF on December 8, 2014. (*Id.*, PageID.315.) Frazier says that he refused to go to general population and received a misconduct for disobeying a direct order and was placed in segregation. (*Id.*) Frazier says that he was taken before Defendants Isard, Dunton, and McLeod, who asked Plaintiff to return to general population. Plaintiff was afraid of being assaulted and refused. Defendants Isard, Dunton, and McLeod were angry and told Frazier that if he did not comply, they would send him to a level-five facility, which was an increase of three levels. (*Id.*, PageID.316.)

On April 29, 2015, Frazier was transferred MBP. (*Id.*) Frazier remained at MBP until September of 2015, when he was transferred back to URF. (*Id.*) Frazier alleges that upon his arrival at URF, he requested protection, but when Defendants Isard, Dunton, and McLeod told him that he would miss his first outdate if he did not go to general population, he withdrew his request under duress and went into the general population. (*Id.*)

Frazier alleges that on January 23, 2016, he moved to level-two housing on the same floor as Dontee Laury. (*Id.*, PageID.318.) Frazier says that he told officer Russo his concerns but Russo responded that he would be "all right" because they had just installed new cameras that could see "through the eye of a needle." (*Id.*)

Frazier says that he went to the yard and was stabbed several times in the back, neck, and shoulders. (*Id.*) Following the stabbing, Frazier sought the assistance of Officer Grove, who was standing a few feet away during the attack. (*Id.*) Frazier says that the yard was then locked down, and he was informed that

that the incident was not caught on camera and that they did not know who had stabbed him.  (*Id.*)  After this incident, Frazier was transferred for his protection. The Request for Protection/Investigation Report states in part:

**REASON PROTECTION IS BEING REQUESTED**
(Include who made the request and the circumstances or claims relating to the request; attach extra pages if necessary.)

Inmate Frazier approached Officer J. Grove on the East Big Yard, Frazier had multiple puncture wounds to his right arm and shoulder. Officer Grove escorted Frazier to health service for treatment of his wounds.

| Reporting Staff Name & Title: | Signature: | Date: |
|---|---|---|
| D. Gallagher, SGT. | [signature] | 1/23/16 |

**INVESTIGATION INFORMATION**
Prior protection requests and placements, including in protective segregation:

Additional Information: Inmate Frazier has previous attempts for protection at KCF and URF.

Investigation Narrative: (Attach extra pages if necessary.)
Inmate Frazier has lengthy list of R20's and claims that he has tried for protection at KCF and URF. Frazier received numerous puncture wounds to his right arm and shoulder. Frazier claims that he did not know his assailant. No camera footage showed the incident. Frazier was transported to WMH for treatment of his injuries. Upon his return Frazier will be placed in THC #2 for his protection.

| Investigator Name & Title: | Signature: | Date: |
|---|---|---|
| D. Gallagher, SGT. | [signature] | 1/23/16 |

Note: Forward to Deputy Warden for SCC review when above is completed.

**SCC REVIEW AND DECISION**
(Include rationale for decision. If transfer to general population at another facility is recommended, include why it is believed protection needs cannot be met at current facility.)

PRISONER WAS STABBED BY AN UNKNOWN PRISONER(S) ON THE YARD. TRANSFER TO ALTERNATE LEVEL II FACILITY TO ACCOMMODATE PRISONERS PROTECTION NEEDS.

(ECF No. 87-1, PageID.572.)

Frazier has not identified any of his attacker or any individual who made a threat to him.  Frazier explained at this deposition:

- 8 -

> Defense Counsel: How do you know that -- if you don't know who these people are how do you know that they stabbed you because of your case?
>
> Frazier: I'm saying it could have been Dontee Laury. He was in the same unit with me, we went to yard, it could have been him.
>
> Defense Counsel: But you're not sure because you didn't see him, right?
>
> Frazier: I didn't see nobody, man. I wear glasses, it was foggy, it was snowy outside, it was winter, real cold.   I was messed up, man.

(ECF No. 79-6, PageID.477.)

## IV.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V. Analysis of Frazier's Eighth Amendment failure to protect claim

### A. Legal Standards

Frazier alleges that Defendants failed to protect him from an inmate assault, despite being aware of an actual threat of harm. Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a

- 10 -

substantial risk of harm was present, and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, Frazier must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety, because he had heard rumors regarding a planned attack. The court noted that plaintiff made only general allegations that someone was going to hit him on the head. Plaintiff was subsequently assaulted. In dismissing the claim, the court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff and concluded that defendants, at most, were guilty of mere negligence which failed to rise to the level of an Eighth Amendment violation.

**B. Overview**

The question before the Court is whether the evidence presented by the parties establishes (or fails to establish) a genuine issue of material fact regarding the elements of Frazier's Eighth Amendment failure to protect claim.

The evidence before the Court includes several pieces of information that are not in dispute. First, the evidence indicates that Frazier felt threatened by other prisoners while in custody at URF and KCF. Second, the evidence shows that Frazier reported his concerns – at least, in part – to prison officials. Third, the evidence shows that the prison officials responded to Frazier's allegations by temporarily placing him in segregation and conducting investigations of his allegations. Fourth, the evidence shows that Frazier did not identify who threatened or assaulted him and did not offer an explanation for the threats or assaults at the time of the SCC investigations. And finally, the evidence indicates that prior to Frazier's transfer in 2016, he was not allowed to remain in protective custody, and, instead, was sent back to general population.

The undersigned concludes that the evidence before the Court fails to establish a genuine issue of material fact regarding Defendants' awareness of a substantial risk of serious harm to Frazier for several reasons. First, Defendants placed Frazier in segregation and investigated his threat and assault allegations. This fact indicates that, in their initial response, MDOC officials did not simply ignore Frazier's allegations.

Second, the records before the Court indicate that MDOC officials did not

uncover facts establishing a "sufficiently serious" threat, *Farmer*, 511 U.S. at 834, against Frazier during the SCC investigations. In fact, during the SCC investigations, Frazier did not identify the prisoner or prisoners who threatened and assaulted him, and did not offer an explanation for the alleged threats or assaults. (*See* ECF No. 79-4, PageID.469 (SCC review and decision dated Nov. 12, 2014); ECF No. 79-4, PageID.471 (SCC review and decision dated Nov. 21, 2014); ECF No. 87-1, PageID.572 (SCC review and decision dated Jan. 23, 2016).) Frazier's apparent silence on these critical facts undercuts his claim that Defendants were aware of a sufficiently serious threat to his safety and were deliberately indifferent to it. Frazier could have informed the SCC that he thought the alleged assaults were the result of the vendetta he feared in 2013. The SCC could then have investigated this allegation. Here, Frazier's silence, or at least his apparent reluctance to provide full information, prevented Defendants from assessing whether a sufficiently serious threat to Frazier's safety existed. Frazier's response to Defendants' motion for summary judgment does not explain how Defendants could be aware of a significant threat to his safety when he did not provide Defendants with the information they would need to investigate fully his allegations.

Third, Frazier's admissions during his deposition confirm that he could not link the alleged threats and assaults to his 2006 murder case from Saginaw County. In other words, at best, Frazier has alleged that he advised prison officials of a generalized threat coming from an unknown person for an unknown reason. Prison

officials would obviously have a difficult chore assessing and crediting such threat allegations.

As stated above, prison officials have a duty to protect inmates from violence caused by other prisoners. *Wilson*, 501 U.S. at 303. Here, prison officials took steps to protect Frazier and to investigate the nature of the threats against him. When they failed to uncover any sufficiently serious threats, they returned Frazier to the general population. Based on the evidence in the record, Defendants' actions seem reasonable under the circumstances. Frazier, quite understandably, disagrees with their decisions. But his disagreement with the outcome of the threat investigations does not help him overcome Defendants' summary judgment motion.

### C. Additional Analysis Relating to Specific Defendants

#### 1. Defendant Butler

Frazier alleges that he requested protection from Defendant Butler between October 2013 and January 2014. Defendant Butler attests that Frazier never asked him for protection, he had no knowledge of any threats made to Frazier, and that he would never disregard a request for protection from any prisoner. (ECF No. 79-2, PageID.462.)

Frazier dated his original complaint on May 11, 2017. (ECF No. 1.) State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*,

782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Id.* at 220.[2]

Frazier alleges that Defendant Butler last denied him protection in the middle of January of 2014. Defendant Butler had no other involvement with Frazier. Frazier signed his complaint on May 11, 2017. Under the mailbox rule, Frazier's complaint is considered filed when he hands it to prison officials for mailing.[3] Therefore Frazier's claims that accrued prior to May 11, 2014, are barred under the three-year statute of limitation period. Frazier says that Defendant Butler violated his rights prior to May 11, 2014. In the opinion of the undersigned, Defendant Butler is entitled to dismissal on statute of limitations grounds.

## 2. Defendant McGeshick

Defendant McGeshick was Frazier's mental health provider while he was confined at URF.[4] Frazier attached a Step I Grievance Response that indicates that

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

[3] Under the mailbox rule, the pleading is deemed filed when handed to prison authorities for mailing. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002). The Sixth Circuit adopted the mailbox rule from the Supreme Court's decision in *Houston v. Lack*, 487 U.S. 266, 270-72 (1988).

[4] The Defendants' motion for summary judgment has an unsigned affidavit for Cory McGeshick attached. (ECF No. 79-3, PageID.465-467.) Therefore, the Court

Defendant McGeshick, as a mental health provider, did not have authority over his custody and that was an issue for the SCC. The response states in part:

**SUMMARY OF COMPLAINT:**

Mr. Frazier stated during interview on 1/29/15 that he feels Mr. McGeshick mislead him about what level he would be returned to in general population. He is upset at SCC for "laughing at him" and believes that mental health and custody are colluding against him. His thoughts on this are rambling, but he feels his case manager lied to him and makes fun of him along with custody and because of this he is not getting adequate mental health care. He feels he should be sent to another facility

**INVESTIGATION INFORMATION**

Mr. McGeshik, LMSW is a Qualified Mental Health Staff member. Mr. Frazier is an outpatient inmate with serious mental illness with symptoms including some paranoia and delusional thinking. Mr. McGeshick stated a different context to the conversation he had with the inmate. Mr. Frazier was able to see how some of what he was believing could have been misinterpreted. He was not however willing to sign off of on the grievance at this time.

**APPLICABLE POLICY, PROCEDURE, ETC.**

04.06.183 Section G for definition of QMHP. Section F defines available mental heatlh services to inmates. Section O defines general examination determination.

**SUMMARY**

Mr. Frazier is upset over the decisions of SCC and custody as to his housing level, etc. This is not in the control of mental health, nor is mental health a part of their decision process in any way. This was explained to Mr. Frazier. He seemed to understand this. Mr. McGeshick has followed all mental health process and policy. There are no grounds to continue this grievance and therefore it is denied.

(ECF No. 87-1, PageID.564.)

In the opinion of the undersigned, Frazier has failed to establish that he asked Defendant McGeshick for protection from a threat of harm or that Defendant McGeshick disregarded a request for protection. The SCC was involved in reviewing Frazier's request for protection. Defendant McGeshick was not a member of the SCC and only provided mental health treatment to Frazier. Thus, Frazier has not alleged facts creating a genuine issue of material fact relating to his Eighth Amendment claim against McGeshick.

---

should not consider the affidavit.

### 3. Defendant McLeod

Defendant McLeod was not a member of the SCC and was not involved in the decision to grant or deny Frazier protection. (ECF No. 79-11, PageID.496-498.) The only involvement Defendant McLeod ever had with the SCC was to make a list of prisoners scheduled to be interviewed by SCC members. (*Id.*, PageID.497.) Thus, Frazier has not alleged facts creating a genuine issue of material fact relating to his Eighth Amendment claim against McLeod.

### 4. Defendant Marlette

Defendant Marlette was a member of the SCC and was involved in denying Frazier requests for protection on November 14, 2014 (ECF No. 79-4, PageID.469) and on November 21, 2014 (*Id.*, PageID.471). As explain in the Overview section above, the SCC reports indicate that Frazier failed to provide information identifying the person or persons who allegedly threatened him. (*Id.*) Although, Frazier asserted that he was assaulted on November 15, 2014, in the G-Unit, and again on November 16, 2014, in the chow hall, his credibility was at issue because he never reported the alleged assaults. (*Id.*, PageID.471.) In addition, Defendant Marlette was involved in reclassifying Frazier to a security level 2 due to his receipt of misconducts for disobeying a direct order. In the opinion of the undersigned, Frazier has failed to show that Defendant Marlette acted with deliberate indifference to a serious risk of harm to Frazier's safety because he has failed to present evidence showing a genuine issue of material fact regarding whether Marlette knew of a serious threat to Frazier.

### 5. Defendants Dunton and Isard

Frazier has not alleged that he was denied protection by Defendants Dunton or Isard in violation of his Eighth Amendment rights.[5] Frazier says that Defendants Dunton and Isard were involved in transferring him to security level 5 at MBP. (ECF No. 52, PageID.316.) He says that after he was transferred from MBP to URF, he spoke with them about getting protection, but withdrew the request after learning that his early out date would be extended. (*Id.*) Frazier states that Defendants Dunton and Isard gave him misconduct tickets for denying direct orders to return to general population, which caused his security level to increase. But neither Dunton nor Isard moved Frazier to general population out of segregation or protective custody. In the opinion of the undersigned, Frazier has failed to assert facts that could show that Defendants Dunton or Isard were deliberately indifferent to a threat to his safety.[6]

---

[5] Defendants Dunton and Isard submitted unsworn affidavits that cannot be considered by this Court. (ECF Nos. 79-9, PageID.488-490, 79-10, PageID.492-494.)

[6] Alternatively, Defendants move for the qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the

## VI.  Recommendation

As previously stated, this Court is not unsympathetic to Frazier's concerns. But it is clear from the record that prison officials conducted investigations of Frazier claims and concluded that Frazier did not face a substantial risk of inmate assault. Frazier has not presented evidence showing a genuine issue of material fact remains in this case. Thus, the undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   February 18, 2020                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U.S. MAGISTRATE JUDGE

---

time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* In the opinion of the undersigned, Defendants are entitled to the defense of qualified immunity because Frazier cannot support his claims.